<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **CONTINENTAL INSURANCE CO.,** | : | **Civil Action No.: 10-4586 (MLC)** |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| **SECURI ENTERPRISES, INC., et al.,** | : | |
| Defendants. | : | |
| _____ | : | |

<u>**ARPERT, U.S.M.J**</u>

**I.     INTRODUCTION**

   This matter having come before the Court on a Motion by Defendants Securi Enterprises, Inc. ("Securi"), Scott Sanders ("Mr. Sanders"), and Marcie Lyn Ury-Sanders ("Mrs. Sanders") (collectively, "Defendants") to stay this proceeding pending the outcome of an ongoing criminal investigation or, alternatively, staying the depositions of Mr. and Mrs. Sanders for six (6) months with such stay to be revisited at the end of that period [dkt. entry no. 46], returnable December 6, 2010. Plaintiff Continental Insurance Company ("Plaintiff") filed opposition on November 22, 2010 and Defendants filed a reply on November 29, 2010.  For the reasons stated herein, Defendants' Motion to stay this proceeding is granted.

**II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

   On August 27, 2009, Plaintiff filed a Complaint in the United States District Court for the Eastern District of New York ("Eastern District of New York") against Defendants.  [dkt. entry no. 1]  On January 8, 2010, Defendants filed a motion to transfer venue from the Eastern District of New York to the United States District Court for the District of New Jersey ("District of New Jersey"),

a motion which Plaintiff did not oppose. [dkt. entry no. 19]  By Order dated September 8, 2010, Defendants' motion to transfer venue was granted and this matter was transferred to the District of New Jersey. [dkt. entry no. 35]  Between January 2010 and September 2010, the parties engaged in limited discovery, including the provision of answers to interrogatories by Mr. and Mrs. Sanders. *See* Pl.'s Opp'n Cert. of Nancy Lem ("Lem"), Exhs. G & H.  On November 12, 2010, Defendants filed an Answer. [dkt. entry no. 45]

Plaintiff's Complaint against Defendants seeks rescission of the business automobile policy issued to Securi for the policy year April 2, 2008 to April 2, 2009 and declaratory relief against certain individual defendants who have asserted claims for damages against Securi and its drivers for automobile accidents involving vehicles that were covered under Plaintiff's policy.  Specifically, Plaintiff alleges that Mrs. Sanders, acting as a New York licensed insurance broker, submitted a commercial insurance application on behalf of Securi through Zaloom Associates, Inc. ("Zaloom"), a New Jersey insurance agency, in which Securi was represented to be a New Jersey computer sales and service company.  Based upon this application, Plaintiff issued a business automobile policy to Securi for the policy year of April 2, 2007 to April 2, 2008 which was renewed for the policy year April 2, 2008 to April 2, 2009.  Importantly, Securi's sole director is Mr. Sanders.

During the 2008-2009 policy year, Plaintiff became aware of a series of automobile accidents that occurred in or around Brooklyn, New York involving vehicles owned by Securi.  In November 2008, Zaloom alerted Plaintiff that the Securi auto fleet was "being used as a Limo/Livery service" and that it had "closed" Mrs. Sanders "from any further business" with Zaloom.  *See* Pl.'s Opp'n Cert. of Lem, Ex. E.  On December 2, 2008, Plaintiff issued a Notice of Cancellation to Securi effective January 5, 2009 based upon "material misrepresentation or nondisclosure of material fact"

– namely, Securi initially presented itself as a "Computer Repair Service" but "recent discovery...identified risks operations as a livery service". *Id.*, Ex. F.

In fact, Securi was one (1) of one hundred ten (110) entities being investigated by the United States Attorney's Office for the Southern District of New York ("US Attorney") as early as March 2009. *See* Def.'s Cert. of Jeffrey Hoffman ("Hoffman") at ¶ 2; *see also id.*, Ex. B. On March 24, 2009, the US Attorney issued nineteen (19) grand jury subpoenas to various entities, including the "Marcie Lynn Ury Sanders Insurance Agency". *Id.* at ¶ 2; *see also id.*, Ex. A. These grand jury subpoenas included the production of documents related to Securi. *Id.* at ¶ 2; *see also id.*, Ex. B. Additional materials were subpoenaed in June (*Id.* at ¶ 2; *see also id.*, Ex. C) and September of 2009 (*Id.* at ¶ 2; *see also id.*, Ex. D).

Defendants' attorney has met with the US Attorney and represents that a "mail and wire fraud investigation concerning Mr. Sanders and activities he was allegedly involved in related to owning and insuring vehicles in the livery industry" is ongoing. *Id.* at ¶ 3. More specifically, Defendants' attorney met the "new prosecutors who were handling the investigation on January 15, 2010" and represents that "Mr. Sanders [is] the target of the investgation". *Id.* at ¶ 3. On October 25, 2010, the US Attorney issued a subpoena to "CJO Consulting", Mr. and Mrs. Sanders' accounting firm, with a rider specifically requesting information about "any...entity controlled by Scott Eric Sanders, Marcy Ury-Sanders...or any work paid for by the same individuals for the period of January 1, 2000 through the present...". *Id.*, Ex. E.

On November 12, 2010, Defendants filed the present Motion to stay this proceeding pending the outcome of the criminal investigation or, alternatively, staying the depositions of Mr. and Mrs. Sanders for six (6) months with such stay to be revisited at the end of that period. [dkt. entry no. 46]

A.  **Defendants' Arguments in Support of the Motion to Stay**

1.  **The Court should stay this action pending the outcome of the criminal investigation.**

Citing *Walsh Secs., Inc. v. Cristo Prop. Mgt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998), *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970), *Tucker v. N.Y. Police Dept.*, 2010 WL 703189, at *6 (D.N.J. 2010), *Kress v. City of Ventor*, 2009 WL 750103, at *2 (D.N.J. 2009), *Warner v. Kozub*, 2007 WL 162766, at *2 (D.N.J. 2007), and *In re NJ Affordable Homes Corp.,* 2007 WL 869577, at *5 (Bankr. D.N.J. 2007), Defendants contend that the "court has discretion to stay a case if the interests of justice require it" and should evaluate a particular case based upon the following six (6) factors: (1) the extent to which the issues in the criminal and civil cases overlap; (2) the status of the case, including whether the defendants have been indicted; (3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; (4) the private interests of and burden on defendants; (5) the interests of the court; and (6) the public interest. *See* Def.'s Br. at 4-5.  Plaintiff argues that "all of these factors, taken together, favor staying this action pending the outcome of criminal proceedings." *Id*. at 5.

(a) **There is an overlap of issues in the civil and criminal cases.**

Citing *Walsh*, 7 F. Supp. 2d at 527 and *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (1989), Defendants maintain that the overlap of issues in the pending civil and criminal cases favors staying this matter.  Defendants note that "the criminal investigation is inquiring into the activities of Mr. and Mrs. Sanders...and Securi". *Id*.  Specifically, Defendants point out that nineteen (19) grand jury subpoenas have been issued "seeking information concerning Securi, Mr. and Mrs. Sanders, the issuance of insurance, and the Taxi and Limousine Commission", including

a subpoena issued to "Mr. Sanders' accountant". *Id*. Defendants argue that because the Complaint in this matter deals directly with the same issues – "an alleged fraudulent scheme involving obtaining insurance coverage for automobiles registered by Securi...which were used as taxis and/or private limousines for hire...and in which Mr. and Mrs. Sanders allegedly participated" – a stay is warranted. *Id*.

> **(b)  The status of the criminal case may result in Mr. and Mrs. Sanders asserting their Fifth Amendment privileges and former Securi employees serving as government witnesses.**

Citing *Walsh*, 7 F. Supp. 2d at 527-28, *Tucker*, 2010 WL 703189, at *7, *Warner*, 2007 WL 162766, at *2, *Parallel Proceedings*, 129 F.R.D. at 204, *Volmar Distribus., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 38 (S.D.N.Y. 1993), and *In re NJ Affordable Homes Corp.,* 2007 WL 869577, at *5, Defendants maintain that it is "still possible to obtain a stay" in this matter even though an indictment has not been returned because "the Government is conducting an active parallel criminal investigation". *Id*. at 5-6. Defendants compare the present matter to the circumstances at issue in *Walsh*, where a civil action was filed while "the U.S. Attorney in New Jersey was investigating...and, although no indictments had...been handed down, the Government had executed search warrants[,]...issued subpoenas to several defendants[, and]...the defendants had been notified that they were targets of the criminal investigation". *Id*. at 6. Defendants note that a stay was issued in *Walsh* based upon the likelihood that the "defendants were likely to feel compelled to assert their Fifth Amendment privilege...[and the fact that] the status of the criminal investigation would likely lead to complications in the civil case". *Id*. Here, Defendants argue that "although no indictments have been issued..., the U.S. Attorney in the Southern District of New York is actively investigating Defendants in connection with the matters alleged in the Complaint, having issued nineteen grand

jury subpoenas concerning Securi, Mr. and Mrs. Sanders, the obtaining of insurance and the Taxi and Limousine Commission...". *Id*. at 6-7. Defendants note that their counsel "has been notified that Mr. Sanders is a target of the criminal investigation" and that a grand jury subpoena has been issued to "Mr. and Mrs. Sanders' accountant". *Id*. at 7. Defendants argue that all of this "signals that the investigation is reaching a terminal phase that will likely result in the issuance of indictments against Mr. Sanders and possibly others involved in this case". *Id*. As a result, Defendants contend that "Mr. and Mrs. Sanders will almost certainly assert their Fifth Amendment privilege" and discovery may be sought from other witnesses, such as employees of Securi, who may also be "potential Government witnesses". *Id*. Defendants argue that this action should be stayed "rather than try to unravel [this] Gordian Knot". *Id*.

### (c)    Plaintiff will not suffer undue prejudice as a result of any delay caused by a stay.

Citing *Walsh*, 7 F. Supp. 2d at 528, Defendants maintain that the fact that Plaintiff will not suffer undue prejudice or delay favors staying this matter. *Id*. Defendants note that Mr. Sanders has already asserted his Fifth Amendment privilege in response to certain discovery requests. *Id*. Defendants argue out that "delays in civil cases are fairly common" and, in any event, Plaintiff is protected from any "financial losses" suffered due to any delay "by its ability to obtain interest as part of its ultimate judgment". *Id*. at 7-8. Defendants further argue that Plaintiff has itself already delayed the resolution of this case by initially filing suit in "the Eastern District of New York". *Id*. at 8.

### (d)    Defendants will be prejudiced as a result of the denial of a stay.

Citing *Walsh*, 7 F. Supp. 2d at 528 and *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976),

Defendants maintain that the prejudice they will suffer favors staying this matter. *Id*. at 8. Defendants note that Mr. and Mrs. Sanders are "almost certain to assert their Fifth Amendment privilege...in their depositions", Plaintiff "will...likely ask for an adverse inference against [Defendants] as to the questions with respect to which they assert the privilege", and "the Government in the criminal proceedings will almost certainly seek access to the discovery materials produced in this case". *Id*. While forcing Defendants into this choice is not "unconstitutional", Defendants argue that the Court should "exercise its discretion to stay the civil case in the interests of justice". *Id*.

### (e)     Considerations of judicial efficiency warrant a stay.

Citing *Walsh*, 7 F. Supp. 2d at 528, Defendants maintain that the interests of "judicial efficiency" and "resolving cases" favors staying this matter. *Id*. at 9. Defendants argue that Mr. and Mrs. Sanders' need to "assert their Fifth Amendment privilege will complicate the supervision of discovery for the Court" at this time. *Id*. Oppositely, "if the case is stayed until the criminal proceeding is resolved, none of those issues will exist and the remainder of proceedings...can go forward unburdened by those privilege issues". *Id*.

### (f)     No harm will be done to the public if a stay is granted.

Citing *Walsh*, 7 F. Supp. 2d at 529, Defendants maintain that "no harm will be done to the public interest if this case is stayed" because there is "no overarching public interest in this case proceeding to completion at this time". *Id*. Defendants argue that a stay would in fact benefit the public interest by allowing the government to conduct a complete, unimpeded investigation into potential criminal activity. *Id*.

        **2.**      **In the alternative, the Court should stay the depositions of Mr. and Mrs. Sanders for six (6) months.**

Citing *Walsh*, 7 F. Supp. 2d at 529 and *SEC v. Schiff*, 2006 WL 2690266 (D.N.J. 2006), Defendants maintain that "even if the Court declines to stay this action as a whole...it should stay Mr. and Mrs. Sanders' depositions for six months and revisit such stay at the end of that period with an eye to either extending the stay or dissolving it...depending on the facts on the ground at that time". *Id*. at 10. Defendants argue that a "six-month stay of the depositions...would temporarily alleviate the concerns about [Defendants'] assertion of the privilege against self-incrimination" and could be extended or vacated in the future as circumstances dictate. *Id*.

    **B.**    <u>**Plaintiff's Arguments in Opposition to the Motion to Stay**</u>

        **1.**      **The Defendants have not demonstrated that a stay is warranted in this matter and, therefore, the Motion should be denied.**

Citing *In re NJ Affordable Homes Corp.,* 2007 WL 869577, at *5 and *Walsh*, 7 F. Supp. 2d at 523, Plaintiff maintains that the "stay of a civil case is an extraordinary remedy [that] is appropriate only under extraordinary circumstances" and agrees that the standard for granting a civil stay pending a criminal investigation is based upon the six (6) factors set forth above by Defendants. *See* Pl.'s Opp'n Br. at 5.

           **(a)**      **There is insufficient overlap of the criminal and civil cases to warrant a stay.**

Plaintiff notes that the affidavit submitted by Defendants' counsel, Mr. Jeffrey Hoffman ("Hoffman Affidavit") [dkt. entry no. 48], "indicates that over 100 entities and nine individuals are being investigated" and that "the investigation involves mail and wire fraud related to owning and insuring livery vehicles". *Id*. at 6. However, Plaintiff points out that it is "only suing one entity and

8

two of the investigated individuals", that Mr. Sanders is the only "target at this time", and that the subpoenas issued in the criminal investigation "are quite broad in their scope". *Id*. Plaintiff argues that the representations set forth in the Hoffman Affidavit are "simply advocacy on behalf of [Defendants] to persuade the Court that [Defendants'] application for [a] stay is warranted". *Id*.

### (b) The status of the case, including the fact that Defendants have not been indicted, does not warrant a stay.

Plaintiff notes that although Mr. Sanders is the "target of the investigation", there is no indication of when/whether Mr. Sanders may be indicted. *Id*. With respect to Mrs. Sanders and Securi, Plaintiff points out that the Hoffman Affidavit does not state that they are "targets" and only proffers a "heightened concern on the possibility of Mrs. Sanders (and Mr. Sanders) testifying in this matter". *Id*. Citing *Walsh*, 7 F. Supp. 2d at 526, Plaintiff maintains that the "Government submitted a sealed, in camera, affidavit elaborating as to the status of the investigation" in that case which "convinced the court that the defendants were indeed targets of an investigation and were about to be indicted". *Id*. at 6-7. Plaintiff compares the present matter to the circumstances at issue in *In re NJ Affordable Homes Corp.*, where the "court declined to follow *Walsh*" based upon "the exact same set of circumstances presented here". *Id*. at 7. Specifically, the defendant in *In re NJ Affordable Homes Corp.* sought a stay of that civil action "as he was allegedly informed that he was a target of an ongoing criminal investigation" but the "court was not persuaded" because the defendant "had provided documents in response to a criminal subpoena over a year before he sought stay of the civil proceeding but the United States Attorney had not yet returned an indictment...nor did the United States Attorney provide any affidavit in support of the defendant's application for stay". *Id*. Here, Plaintiff maintains that the Hoffman Affidavit indicates that the Defendants "were aware of an

investigation since March 2009", or, more specifically, five (5) months before Plaintiff filed this action, ten (10) months before Hoffman & Pollak, LLP entered its appearance on behalf of Defendants, and twenty (20) months before the filing of this application for a stay. *Id*. However, to date, no indictment has been returned. *Id*. Plaintiff argues that "without any evidence other than a statement in the Hoffman Affidavit that 'the investigation is entering its culminating stage', the Court should reject this factor as being favorable for Defendants". *Id*.

### (c)   The Plaintiff has a substantial interest in proceeding expeditiously and would be unduly prejudiced by a delay.

Plaintiff contends that "due to circumstances beyond [its] control", this matter has already been delayed for at least six (6) months during motion practice related to Defendants' request to transfer venue. *Id*. at 8. Plaintiff notes that it "has been defending" bodily injury actions filed by defendants Demetrius Fincher ("Fincher") and Paris Nembhard ("Nembhard") in New York state court (collectively, "New York actions") and has "filed a motion to intervene and for stay of those actions pending the disposition of this matter", but those issues have not been decided yet. *Id*. Plaintiff also notes that Fincher's personal automobile carrier GEICO "has filed a stay of arbitration and request for a hearing on Continental's relief requested in [that] matter (rescission of its policy and retroactive application of statutory minimums)". *Id*. As such, "there is a possibility of inconsistent rulings if the New York trial court in the GEICO matter decides this issue first". *Id*. Plaintiff contends that "if the New York trial court is advised this matter has been stayed, it may decide that...Continental must submit to the hearing". *Id*. at 8-9. Plaintiff argues that, in such instance, it would be severely prejudiced in having to litigate the same issues in two (2) different forums and prefers "to have this Court decide the issue as Continental filed its action prior to

GEICO's petition". *Id*. at 9.  Plaintiff further argues that a stay of this matter will "wreck havoc" on the New York actions, as those cases "have not been consolidated for disposition" and "it is more probable than not that each New York trial court would issue its rulings inconsistent with each other". *Id*.  Plaintiff goes on to point out that it is seeking equitable relief in this matter, such that while Defendants "take advantage of the Court's calendar, Continental must continue to defend and process claims that fall within the policy period". *Id*.  Plaintiff argues that Defendants "should not be allowed to continue to benefit from [their] fraud by attempting to further delay the case". *Id*.

### (d) Defendants have waived their Fifth Amendment privilege and, therefore, any right to a stay.

Citing *Baxter*, 425 U.S. at 318-19, Plaintiff notes that the "United States Supreme Court has held that it is not unconstitutional to force a defendant into waiving his Fifth Amendment rights and defend himself in a civil suit or assert the privilege and probably lose the civil case". *Id*. at 9.  Plaintiff points out that here, Defendants answered the Complaint without asserting the Fifth Amendment, Mr. Sanders asserted the Fifth Amendment in his answers to interrogatories, and Mrs. Sanders provided some answers to interrogatories while avoiding others. *Id*. at 9-10.  Citing *State Farm Mutual Auto Ins. Co., v. CPT Medical Services, P.C.*, 375 F. Supp. 2d 141, 157 (E.D.N.Y. 2005), Plaintiff argues that Defendants "have already waived any right for a stay...as they have waived their Fifth Amendment rights by answering the complaint and providing [some] discovery responses". *Id*. at 10.

### (e) Defendants have failed to show that the interests of the Court warrant a stay.

Citing *Walsh*, 7 F. Supp. 2d at 528, Plaintiff maintains that the "Securi/Sanders defendants have not shown that they have been indicted or will be indicted" and, therefore, that the Court's

interest in judicial efficiency would not be furthered by granting a stay. *Id*. at 10. Plaintiff argues that staying this matter "simply because Mr. Sanders is a 'target'"is unwise due to the indefinite nature of the associated delay. *Id*. Plaintiff argues that there is no prediction of when the criminal proceeding will culminate in an indictment or [whether it] would end expeditiously if an indictment was handed down" and asks that Defendants' request for a stay be denied. *Id*.

### (f) The public interest weighs against Defendants application for a stay.

Plaintiff argues that "there are more interests involved than Continental and the Securi/Sanders parties", as there are "three cases...pending in the state courts of New York whose outcome hinges on whether or not Continental can successfully prosecute this case against the Securi/Sanders defendants". *Id*. at 11. Plaintiff argues that "it is patently unfair to those litigants who were unwittingly caught in the Securi/Sanders web to now be asked to wait while the Sanders anticipate some undefined and unknown criminal indictment" and asks that Defendants' request for a stay be denied. *Id*.

### III. DISCUSSION

It is well-settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance". *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)(*citing Kansas City Southern Ry. Co. v. U.S.*, 282 U.S. 760, 763 (1931); *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382 (1935)). "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in

extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted". *Id*. at 256. Specifically, "a United States district court has broad power to stay proceedings". *Bechtel Corp. v. Laborers' International Union*, 544 F.2d 1207, 1215 (3d. Cir. 1976). "In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues". *Id*. (*see also American Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937)). However, "it is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity', if there is 'even a fair possibility' that the stay would work damage on another party". *Gold v. Johns-Mansville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983)(*citing Landis v. North American Co.*, 299 U.S. 248, 255 (1936)).

"A stay of a civil case where there are pending criminal proceedings is not constitutionally required, however, it may be warranted in certain circumstances". *Walsh Securities, Inc. v. Cristo Property Management, Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998); *see also Trustees of Plumbers and Pipefitters National Pension Fund v. Transworld Mechanical, Inc.*, 886 F. Supp. 1134, 1138 (S.D.N.Y. 1995). The factors to be considered in deciding whether to grant a stay include: "1) the extent to which the issues in the criminal and civil cases overlap; 2) the status of the case, including whether the defendants have been indicted; 3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; 4) the private interests of and burden on defendants; 5) the interests of the court; and 6) the public interest". *Walsh,* 7 F. Supp. 2d at 527; *see also Transworld*, 886 F. Supp. at 1139. "The similarity of issues has been termed 'the most important issue at the threshold' in determining whether or not to grant a stay'". *Walsh,* 7 F. Supp. 2d at 527(*quoting* Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203

(1989)).  "The state of the parallel criminal proceeding may also substantially affect the determination of whether a stay is warranted [as] 'the strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned...[due to] the potential for self-incrimination'".  *Walsh,* 7 F. Supp. 2d at 527(*quoting Parallel Proceedings*, 129 F.R.D. at 203).  Based upon the fact that "there is less risk of self-incrimination, and more uncertainty about the effect of a delay on the civil case, preindictment requests for a stay are generally denied".  *Walsh,* 7 F. Supp. 2d at 527; *see also United States v. Private Sanitation Indus. Ass'n*, 811 F. Supp. 802, 805 (E.D.N.Y. 1992).  "However, each case must be evaluated individually...[and] it is 'still possible' to obtain a stay...if the Government is conducting an active parallel criminal investigation".  *Walsh,* 7 F. Supp. 2d at 527(*quoting Parallel Proceedings*, 129 F.R.D. at 204); *see also Volmar Distributors, Inc. v. New York Post Co.*, 152 F.R.D. 36, 38 (S.D.N.Y. 1993).

Importantly, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment does not preclude the inference where the privilege is claimed by a party to a civil cause".  *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976).  However, "a court may nevertheless exercise its discretion to stay the civil case in the interests of justice".  *Walsh,* 7 F. Supp. 2d at 528.  The Court also notes that the Third Circuit does not recognize "the availability of a blanket fifth amendment privilege [but] in no way limit[s] the scope of an individual's fifth amendment rights...".  *National Life Ins. Co. v. Hartford Accident & Indemnity Co.*, 615 F.2d 595, 600 (3d Cir. 1980); *see also Hoffman v. United States*, 341 U.S. 479, 486-87 (1951).

  **1. Similarity of Issues**

With respect to similarity of issues between the civil case and criminal investigation,

although perfect symmetry does not exist, the Court finds that the evidence presented by the parties demonstrates significant overlap in this instance.  Plaintiff's civil action alleges fraudulent material misrepresentation(s), mail fraud, and breach of contract related to Defendants' application, procurement, and fulfillment of an automobile insurance policy. [dkt. entry no. 1]  Similarly, the representations of Defendants' counsel in tandem with related subpoenas/riders indicate that the criminal matter includes an ongoing "mail and wire investigation concerning Mr. Sanders and activities he was allegedly involved in related to owning and insuring vehicles in the livery industry", that "Mr. Sanders [is] the target of the investigation", that grand jury subpoenas have been issued to the "Marcie Lynn Ury Sanders Insurance Agency" and Defendants' accountant, and that riders to the grand jury subpoenas include document production requests related to Securi.  *See* Def.'s Cert. of Hoffman at ¶¶2-4; *see also id.*, Exhs. A-E.  In both instances, the allegations relate to fraudulent misrepresentations related to automobile insurance obtained by Defendants.  While the specifics of the criminal investigation have yet to be fully elucidated, the information presented to the Court indicates that this factor weights in favor of a stay.

### 2. Stage of Parallel Criminal Investigation

With respect to the status of the parallel criminal investigation, Defendants have yet to be indicted.  The only other information presented to the Court are the representations of Defendants' counsel together with related subpoenas/riders which indicate that the existence of an ongoing investigation "concerning Mr. Sanders and activities he was allegedly involved in related to owning and insuring vehicles in the livery industry" and that "Mr. Sanders [was] the target of the investigation" as of January 2010.  *See* Def.'s Cert. of Hoffman at ¶¶2-4; *see also id.*, Exhs. A-E.  The parties agree that Mr. Sanders has already provided answers to interrogatories in which he

asserted his Fifth Amendment privilege (*see* Pl.'s Opp'n Cert. of Lem, Ex. G) and Defendants' counsel has asserted that "Mr. and Mrs. Sanders will almost certainly assert their Fifth Amendment privilege" during discovery (*See* Def.'s Br. at 7).

The Court finds Plaintiff's citation to *In re NJ Affordable Homes Corp.,* 2007 WL 869577, at *5 (Bankr. D.N.J. 2007) distinguishable from this case. There, no indictment had been returned and no other information about the criminal investigation was provided at the time defendant requested a stay. Rather, defendant relied upon the fact that he had been subpoenaed by a grand jury and produced relevant document responses over one (1) year before he requested a stay. Here, while no indictment has been returned, Defendants' counsel has provided the uncontested representations set forth above regarding the criminal investigation. Importantly, as recently as October 2010, Defendants' accountant was issued a grand jury subpoena that specifically requested information about "any...entity controlled by Scott Eric Sanders, Marcy Ury-Sanders...or any work paid for by the same individuals for the period of January 1, 2000 through the present...". *See* Def.'s Cert. of Hoffman, Ex. E.

Given the fact that Mr. Sanders has already asserted his Fifth Amendment privilege, that Mrs. Sanders may do the same as discovery moves forward, and the other uncontested relevant information presented to the Court regarding the status of the criminal investigation, this factor also weighs in favor of a stay.

### 3. Prejudice to Plaintiff

The Court acknowledges the arguments set forth by Plaintiff with respect to the related New York actions. However, the Court finds that Plaintiff has already requested a stay in those matters and that this Court has no jurisdiction over same. If Plaintiff's requested relief is granted, Plaintiff

would suffer no harm from a stay of this matter. If Plaintiff's requested relief is denied, assuming Plaintiff is ultimately successful in this matter, it may include any amounts expended in defense of the New York actions or judgments paid in those actions as additional damages in this matter. The Court also acknowledges that GEICO has already requested a stay and hearing on Plaintiff's requested relief in this matter in its New York actions. Again, however, the Court finds that it has no jurisdiction over same. Even if a stay was not granted in this matter, GEICO's requested relief might be granted prior to any final disposition being rendered by this Court.

*In toto*, the Court finds that this factor weighs in favor of Plaintiff; however, the circumstances surrounding any prejudice to Plaintiff are either outside this Court's jurisdiction or may be ameliorated in due course.

### 4. Burden on Defendants

With respect to the burden on Defendants, the Court finds that this factor weighs in favor of a stay. As outlined above, Defendants may be placed in the position of waiving their Fifth Amendment privilege in order to defend this matter, thereby suffering detrimental consequences in any criminal action. Oppositely, Defendants may be placed in the position of asserting their Fifth Amendment privilege in order to protect themselves in the criminal investigation, and thereby be subjected to adverse inferences in this matter. Based upon applicable law, responses provided thus far in discovery, and the representations of Defendants' counsel, Plaintiff has failed to demonstrate that Defendants waived their Fifth Amendment privilege. Accordingly, this factor weighs in favor of a stay.

### 5. Interests of the Court

With respect to the interests of the Court, while the Court acknowledges the seeming

inefficiency associated with an indefinite stay given the fact that the criminal investigation remains ongoing and uncertain to return any indictment, the provision of regular progress updates will minimize the Court's concern in this regard. Further, the Court finds that the possibility of Defendants' assertion of their Fifth Amendment privilege in response to discovery requests and deposition may "burden the Court with deciding a constant stream of privilege issues". *Walsh,* 7 F. Supp. 2d at 528-29. This is to say nothing of the possibility of significant liability apportionment issues assuming some Defendants choose to assert their Fifth Amendment privilege while others do not. The Court finds that this factor weighs in favor of a stay.

### 6. Public Interest

With respect to the public interest, although those individuals – including Plaintiff and those involved in the New York actions, among others – who may have suffered adverse consequences at the hands of Defendants may be asked to wait to allow this litigation to take its course, the Court finds that allowing a complete, unimpeded criminal investigation outweighs any prejudice that may occur as a result of delay in this matter. Accordingly, the Court finds that this factor weighs in favor of a stay.

### IV. CONCLUSION AND ORDER

The Court having considered the papers submitted and opposition thereto, and for the reasons set forth above;

**IT IS** on this 21st day of December, 2010

**ORDERED** that Defendants' Motion to stay this proceeding pending resolution of the ongoing criminal investigation [dkt. entry no. 46] is **GRANTED**; and it is further

**ORDERED** that counsel for Defendants shall provide the Court with progress reports

18

regarding the criminal investigation on a bi-monthly basis starting **February 1, 2011**; and it is further

ORDERED that the Court will hold a telephone status conference on Wednesday, **February 2, 2011** to be initiated by Defendants' counsel; and it is further

**ORDERED** that counsel for Defendants shall notify the Court within ten (10) days of any update, indictment, or disposition of the criminal investigation.

> s/ *Douglas E. Arpert*
> **DOUGLAS E. ARPERT**
> **UNITED STATES MAGISTRATE JUDGE**